UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEAGUE CORP., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 24 C 7015 |
| v. | ) ) Judge Sara L. Ellis |
| PALWASHA KHAN and B.WELL CONNECTED HEALTH, INC. | ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Plaintiff League Corp. ("League") brought this action against its former employee Palwasha Khan and competitor b.well Connected Health Inc. ("b.well"), alleging that Khan and b.well collaborated to misappropriate trade secrets from League and solicit League employees to breach their contractual obligations. In addition to claims against Khan, League alleges in its amended complaint that b.well violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; violated the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*; and committed tortious interference with contracts. Now, b.well moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that League has failed to state plausible claims. Because the language of the agreement at issue forecloses the tortious interference claim, the Court grants that portion of b.well's motion to dismiss [37]. Nonetheless, the Court finds that League has adequately pleaded the ITSA and DTSA claims; thus, the Court denies b.well's motion to dismiss those claims.

## BACKGROUND[1]

League is a digital health technology company, incorporated in Delaware, with its principal place of business in Chicago, Illinois. League provides a platform for healthcare organizations, which facilitates their offering digital features to their consumers such as benefits navigation, healthcare provider searches, appointment scheduling, virtual care, health assessments, and rewards programs.

B.well, a company based in Maryland, offers a digital healthcare application that manages medical records, provides family health history, integrates wearable health data, and allows users to view financial information about benefit plans, co-pays, deductibles, and nearby pharmacies. League and b.well are competitors.

Khan is a marketing executive who began employment as a "Product Marketing Manager" with League on April 19, 2021. Doc. 31 at 5. Khan signed an employment offer letter, which became an employment agreement (the "Khan Employment Agreement") when she started work for League. In addition, Khan signed a Proprietary Information Agreement ("Khan PIA"), which was an appendix to the Khan Employment Agreement. The Khan PIA included a "Non-Disclosure of Confidential Information" term, in which Khan agreed that:

> At all times during and subsequent to the termination of my work with [League], I shall keep in strictest confidence and trust the Confidential Information, I shall take all necessary precautions against unauthorized disclosure of the Confidential Information, and I shall not directly or indirectly disclose, allow access to, transmit or transfer the Confidential Information to a third party, nor shall I copy or reproduce the Confidential Information except

---

[1] The Court takes the facts from League's amended complaint and presumes them to be true for the purpose of resolving b.well's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Further, the Court considers the documents attached to and referred to in the amended complaint. *See Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." (citation omitted)).

> as may be reasonably required for me to perform my duties for
> [League].

Doc. 31-1 at 10. The Khan PIA also contains a "Restricted Use of Confidential Information" term, which in addition to other requirements, required Khan to "not use the Confidential Information in any manner except as reasonably required for [her] to perform [her] work for" League and "not use or take advantage of the Confidential Information for creating, maintaining or marketing, or aiding in the creation, maintenance or marketing, of any software or service which is competitive with any software owned or service maintained by" League. *Id.* Further, the Khan PIA includes a detailed definition of "Confidential Information," which includes any of the following:

> i) any and all version of any software and related documentation owned or marketed by the Corporation (including services related to such software), as well as the technology, software and documentation owned by the Corporation's suppliers and used internally by the Corporation, including all related algorithms, concepts, data, health-related information, graphics, designs, images, audio and visual content, flowcharts, ideas, programming techniques, specifications and source code listings;
>
> ii) all Developments (as defined [elsewhere in the Khan PIA]);
>
> iii) information regarding the Corporation's business operations, methods and practices, including marketing and advertising strategies, product pricing, margins, wages, salaries and hourly rates for staff, budgets, forecasts, analyses, financial results, bids, services and other information regarding the business and financial affairs of the Corporation;
>
> iv) the names, addresses and other information regarding the Corporation's clients and the names of the suppliers to the Corporation, including the nature of the Corporation's relationships with these clients and suppliers;
>
> v) technical and business information of or regarding the clients of the Corporation obtained in order for the

|     |     |
| --- | --- |
|     | Corporation to provide such clients with products and services; |
| vi) | all worldwide intellectual and industrial property of the Corporation, whether registered or unregistered, including but not limited to software, design, and schematics, and all technical expertise and know-how with respect to the products, services and business of the Corporation; |
| vii) | any other trade secret or confidential or proprietary information of the Corporation or third parties with whom it conducts business or that is otherwise in the possession and control of the Corporation; AND |
| viii) | information protected by Canadian or US privacy laws, including personal, employment, health, and financial records of any person collected and maintained by the Corporation in the course of the Corporation's business, but Confidential Information does not include information which is and/or becomes generally available to the public other than due to a breach of this agreement or which I can establish, through written records, was in my possession prior to its disclosure to me as a result of my work for the Corporation. |

*Id.* at 9–10. The Khan PIA also contains a "Non-Solicitation" provision, which states:

a) I agree that while I am an employee of [League], and for twelve (12) months after I cease to be an employee, I will not directly or indirectly on my own behalf or on behalf of any person or entity:

   i) contact or solicit any customer or Prospective customers of [League] for the purpose of selling or supplying products or services similar to those sold or supplied by [League]; AND

   ii) solicit, induce, or attempt to induce or solicit any employee, consultant, supplier, broker, or third-party health provider of [League] to terminate their employment, engagement, or relationship with [League].

. . .

b) After I cease being an employee, clause (a) applies to customers, Prospective Customers, employees, consultants, suppliers, brokers, or third party health

4

> providers who were customers, Prospective Customers, employees, consultants, suppliers, brokers, or third party health providers at any time during the twelve (12) months preceding my last day of employment and (i) with whom I had personal contact; or (ii) about which I gained Confidential Information while employed with the Corporation.

*Id.* at 11–12.

On April 5, 2021, Andrew Harlen started employment with League as "Head of Platform Partnerships." Doc. 31 at 11. Harlen also signed an employment offer letter, which became an employment agreement (the "Harlen Employment Agreement"), and which included a Proprietary Information Agreement ("Harlen PIA") as an appendix. The Harlen PIA contains a "Non-Disclosure of Confidential Information" provision, "Restricted Use of Confidential Information" provision, definition of "Confidential Information," and "Non-Solicitation" provision, which are the same as the provisions in the Khan PIA. Doc. 31-2 at 9–12. While League employed Harlen, he worked closely with another League employee, Humza Raees. Raees reported directly to Harlen at League, and they worked together on fostering relationships with potential partners for League.

On or about May 1, 2023, Harlen verbally resigned from his position at League. When Harlen tendered his resignation, Harlen did not disclose to League that he planned to work for b.well in a position that was substantially similar to his work at League. Instead, Harlen told his manager to "keep an eye on LinkedIn" for information on his future employment. *Id.* at 19. After Harlen left his employment at League, Harlen directly or indirectly solicited Khan and Raees for roles at b.well with the encouragement of b.well.

On or around March 4, 2024, Raees resigned from League. Raees did not disclose to League that he had accepted a substantially similar position at b.well. At his exit interview, Raees stated that he was departing League to "lead a team in strategic partnership." *Id.* at 20.

Khan resigned from League effective March 8, 2024. Khan also did not disclose to League that she planned to work in a substantially similar role at b.well as the "Vice President of Marketing." *Id*. When a League employee asked Khan about new opportunities during her exit interview, Khan stated there was "no opportunity" and implied that she planned to take time off from active employment to work on her own side business. *Id.* Two days before Khan tendered her resignation from League, Khan downloaded 1,144 League files to her personal computer. Before Khan's resignation became effective, she downloaded an additional 866 League files. The documents Khan downloaded included information on League's product roadmaps, pricing frameworks, financial statements, sales enablement documentation, intellectual property, analyst strategy documents, software demos, and internal presentations. League did not authorize Khan's download of the files. Khan downloaded the files with the encouragement of b.well.

In May 2024, after Khan left employment at League and began working for b.well, Khan attempted to justify her downloads to League through her attorney by stating that the downloads were necessary to prepare her off-boarding plan. League states that before Khan's resignation from League became effective, she prepared a nine-page off-boarding plan, and that Khan's unauthorized downloads began before she tendered her resignation. Khan also offered the explanation, through her counsel, that she downloaded the files in order to rename them, compile them, and upload them for ease of access for her successor. However, Khan stated that she did not complete the process after downloading the files because it was too difficult. To date, Khan has not returned the files she downloaded from League.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

League's amended complaint contains five claims: (1) breach of contract of Khan's Employment Agreement, against Khan; (2) breach of contract of Khan's PIA, against Khan; (3) violation of the DTSA, against Khan and b.well; (4) violation of the ITSA, against Khan and b.well; and (5) tortious interference with contract, against b.well. B.well moves to dismiss the DTSA, ITSA, and tortious interference claims for failure to state a claim under Rule 12(b)(6).

**I. Tortious Interference**

The Court begins with b.well's arguments regarding League's tortious interference with contract claim. To state a claim for tortious interference with contract under Illinois law[2], a plaintiff must plead:

---

[2] The parties agree that Illinois law applies, and so the Court does not engage in a choice of law analysis. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009); *Bridgeview Health Care Ctr., Ltd.*

7

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989)).

First, the Court considers b.well's argument that the ITSA preempts League's tortious interference claim. The ITSA preempts a tortious interference with contract claim where the tort claim relies on the misuse of confidential or secret information such that the tort claim could not survive regardless of whether the information at issue was non-confidential. *Gen. Elec. Co. v. Uptake Tech., Inc.*, 394 F. Supp. 3d 815, 834 (N.D. Ill. 2019) (citation omitted). League alleges that b.well tortiously interfered with its contracts with Khan and Harlen because b.well encouraged Harlen to solicit Khan and Raees to work for b.well, in violation of Harlen's contract with League, and encouraged Khan to take the approximately 2,000 documents from League, in violation of Khan's contract with League. The ITSA preempts the portion of League's claim premised on Khan taking confidential and secret documents from League because this portion of the claim could not survive if the alleged information was non-confidential. The portion of League's tortious interference with contract claim premised on Harlen soliciting League's employees to work for b.well is entirely separate and not reliant on any confidential information. Therefore, the Court finds that the ITSA preempts the portion of League's claim premised on Khan taking confidential information from League, but it does not preempt the portion of League's claim premised on Harlen soliciting League employees. *See Traffic Tech., Inc. v. Kreiter*, No. 14 C 7528, 2015 WL 9259544, *15 (N.D. Ill. Dec. 18, 2015) (holding that the ITSA

---

*v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 25 ("[A] choice-of-law determination is required only when the moving party has established an actual conflict between state laws.").

preempted part of plaintiff's claim, where the claim was based on misappropriating confidential information, but refusing to dismiss portions of the claim that were based on separate solicitation conduct).

As for the non-preempted aspect of the claim, b.well argues that the non-solicitation provision in the Harlan PIA was overbroad and unenforceable, such that League has not satisfied the first element of a tortious interference claim. Illinois courts "disfavor, and closely scrutinize, restrictive covenants in employment contracts." *Dressander v. Simplicity Fin. Mktg., Inc.*, No. 19 C 1395, 2023 WL 2561733, at *10 (N.D. Ill. Mar. 17, 2023) (citing *McInnis v. OAG Motorcycle Ventures*, 2015 IL App (1st) 142644, ¶ 26; *Health Pros., Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1029 (2003)). In order to enforce the restrictive covenant, the Court must determine whether the terms of the covenant are reasonable. *McInnis*, 2015 IL App. (1st) 142644, ¶ 26. To make this determination, courts use a "rule of reasonableness test," which provides that "[a] restraint on trade is reasonable only if it: (1) is no greater than is required to protect a legitimate business interest of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public." *AssuredPartners, Inc. v. Schmitt*, 2015 IL App. (1st) 141863, ¶ 32 (citing *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶ 17).

"[W]hether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case." *Reliable Fire*, 2011 IL 111871, ¶ 43. However, in making this determination, courts can consider factors that include whether the nature of the business is such that the customer relationship is near-permanent, whether the employee acquired the confidential information through her employment, and whether time and geographic restrictions are not greater than necessary to protect the employer. *See id.*

9

"In certain circumstances, maintaining stability within an employer's workforce can be a legitimate business interest and thus the basis for a restrictive covenant." *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1013 (N.D. Ill. 2014). Further, "no geographic limitation is necessarily required for" non-solicitation covenants, if they "narrowly circumscribe the class of people with whom contact is prohibited." *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 455 (2007). Courts are sensitive to the degree to which non-solicitation clauses "prejudice the availability of future employment opportunities" and whether non-solicitation clauses restrict former employees from contacting customers or other employees with whom they had no contact while working for their former employer. *Id.* (accumulating cases); *see also Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 795 (N.D. Ill. 2011) (finding a non-solicitation provision overbroad where it barred the solicitation of employees that the employee subject to the covenant may not have had any relationship with or responsibility for while employed by the employer). Under this reasoning, courts have held that non-solicitation provisions that cover individuals with whom the former employee never had contact are overbroad. *See, e.g.*, *Cambridge Eng'g*, 378 Ill. App. 3d at 455 (holding that a non-solicitation provision that covered "any customer, employee or representative of Employer" was overbroad).

Here, the Harlen PIA's non-solicitation provision crosses the line into being impermissibly overbroad because its terms cover relationships that Harlen may not have developed while working for League and are "far broader than necessary to protect [League]'s interest" in preventing Harlen from abusing his relationships with League's workforce. *AssuredPartners*, 2015 IL App (1st) 141863, ¶ 39 (citation omitted). The non-solicitation provision in the Harlen PIA covers a host of categories of individuals with whom Harlen had "personal contact" *or* "about which [Harlen] gained Confidential Information while employed

with the Corporation." Doc. 31-1 at 12 (emphasis added). The definition of "Confidential Information" in the Harlen PIA is quite broad and covers many types of information separate from Harlen's business partnership responsibilities. Harlen may have viewed "Confidential Information" about many individuals with whom he never interacted in any way.

Further, the Harlen PIA does not define "personal contact," so this Court must give the term its "plain, ordinary, and popular meaning." *Sproull v. State Farm Fire & Cas. Co.*, 2021 IL 126446, ¶ 19. The Court understands "personal contact" in the Harlen PIA to mean a connection, association, relationship, or communication that Harlen carried out directly, himself. *See Contact*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/contact (last visited Apr. 28, 2025); *Personal*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/personal (last visited Apr. 28, 2025). The non-solicitation provision does not limit its "personal contact" requirement to communications or relationships that Harlen forged on behalf of League, rather than those communications or relationships Harlen may have made in his personal life. It also does not differentiate substantive communications from trivial ones, such as Harlen making a passing greeting to someone at an event. In sum, the non-solicitation provision is overbroad and unenforceable because its terms cover far more than reasonably necessary to protect League's legitimate interests. *See AssuredPartners*, 2015 IL App (1st) 141863, ¶¶ 39–41 (finding a non-solicitation provision overbroad and unenforceable as it covered more than necessary to protect the employer's interest); *Cambridge Eng'g*, 378 Ill. App. 3d at 455 (finding that a provision that barred an employee from soliciting "any customer, employee or representative of Employer" was overbroad).

The Court declines to "blue pencil" the non-solicitation provision in the Harlen PIA in order to remedy its deficiencies. *See Admiin Inc. v. Kohan*, No. 23-cv-04430, 2023 WL

11

4625897, at *9 (N.D. Ill. July 19, 2023) ("[W]hether to blue-pencil an overly broad restrictive covenant is discretionary under Illinois law."). "Under Illinois law, a court may apply the 'blue pencil doctrine' to a covenant that is unreasonable on its face" and modify the "unreasonable terms of an agreement in order to make it reasonable." *Oce N. Am., Inc. v. Brazeau*, No. 09 C 2381, 2009 WL 6056775, at *13 (N.D. Ill. Sept. 4, 2009) (accumulating cases). However, courts do not modify a restrictive covenant where such a modification would essentially rewrite the contract or where the degree of unreasonableness of the restrictive covenant, as written, makes a rewriting of that provision unfair. *See LKQ Corp. v. Rutledge*, 96 F.4th 977, 983 (7th Cir. 2024) ("Illinois courts 'refuse to modify an unreasonable restrictive covenant . . . where the degree of unreasonableness renders it unfair.'" (citation omitted)). If the Court were to modify the non-solicitation provision in this case to address its major deficiencies, the limits the Court would add would fundamentally rewrite the provision such that it "would be tantamount to fashioning a new agreement." *Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 308 Ill. App. 3d 337, 348 (1999). For this reason, the Court declines to blue pencil the Harlen PIA. *See id.* (refusing to modify a deficient restrictive covenant where necessary modifications would not be minor and would "discourag[e] the narrow and precise draftsmanship which should be reflected in written agreements").

In sum, the Court grants b.well's motion to dismiss the tortious interference claim because the ITSA preempts the portion of the claim premised on Khan improperly taking confidential documents from League and the Harlen PIA's non-solicitation provision is unenforceable.[3]

---

[3] The Court finds that dismissal with prejudice is appropriate because amendment would be futile. The Court does not see any way that League could cure the deficiencies with its tortious interference claim because the ITSA preempts League's claim as to Khan taking confidential documents and, by its terms, the non-solicitation provision is unenforceable. *See Esco v. City of Chicago*, 107 F.4th 673, 683 (7th Cir.

II.     **The ITSA and DTSA**

B.well also moves to dismiss League's ITSA and DTSA claims, alleging that League has failed to adequately plead that the information at issue is a trade secret. The ITSA and DTSA prohibit the misappropriation of trade secrets under Illinois and federal law, respectively. Because the statutes are substantially similar, courts can analyze separate claims brought under these laws together. *See PetroChoice LLC v. Amherdt*, No. 22 C 2347, 2023 WL 2139207, at *7 (N.D. Ill. Feb. 21, 2023). A plaintiff bringing ITSA and DTSA claims must show "that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *REXA, Inc. v. Chester*, 42 F.4th 652, 662 (7th Cir. 2022) (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003)); *see also Aon plc v. Infinite Equity, Inc.*, No. 19 C 7504, 2021 WL 4034068, at *12 (N.D. Ill. Sept. 3, 2021) (DTSA claim requires same elements).

A trade secret consists of (1) business-related information, (2) that the owner has taken reasonable means to keep secret, and (3) that generates economic value through its secrecy. *See* 18 U.S.C. § 1839(3). Trade secret "allegations [are] adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (collecting cases); *see Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (allegation that the defendant "was exposed to confidential information such as customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports" sufficed at the pleading stage). But the "general terms" pleading standard does not give plaintiffs license to allege the existence of a trade secret

---

2024) (explaining that a district court possesses broad discretion to deny leave to amend the pleadings where a review of the claim shows that amendment would be futile).

in a conclusory manner: "It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992).

In the amended complaint, League alleges that the documents Khan downloaded included trade secrets such as "product roadmaps, pricing frameworks, financial statements, sales enablement documentation, League capabilities and intellectual property documents, League positioning, League pipeline and contracts, product and sell sheets, analyst strategy documents, pitches and presentations, League software demos, packaging and pricing, and internal presentations." Doc. 31 at 22. B.well argues that under cases like *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581 (7th Cir. 2002), League must be more specific in identifying trade secrets, and that League cannot merely identify broad categories. B.well "misapprehends the standard applicable at this stage, since *IDX* sets forth the standard at summary judgment," not the standard for the motion to dismiss stage. *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 614 (N.D. Ill. 2023) (rejecting an argument that the plaintiff needed to identify the trade secret with more specificity at the motion to dismiss phase). "At the pleadings stage, plaintiffs can describe trade secret information in general terms." *Gen. Elec. Co.*, 394 F. Supp. 3d at 832. Here, League's allegations meet the pleading standard for a trade secret because the categories of information it describes are business-related information, which League has taken steps to keep secret through the PIAs, creating trade secret policies, and monitoring access to secure information, and which reasonably could generate economic value through their secrecy because they could give League technologic or strategic advantages over their competitors. *See id.* (finding that alleging categories of trade secrets that the defendants had access to, such as

14

pricing information, strategies, and technology information, were adequate to survive a motion to dismiss). The Court, thus, denies b.well's motion to dismiss the ITSA and DTSA claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part b.well's motion to dismiss [37]. The Court dismisses League's tortious interference claim against b.well with prejudice.

Dated: May 6, 2025

_____
SARA L. ELLIS
United States District Judge